## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **Dr. Neville M. Mirza, M.D. on assignment of N.G.,** | DOCKET NO.: 12-7370-RMB-KMW |
| **Plaintiff,** | CIVIL ACTION |
| **v.** | **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| **Insurance Administrator of America Inc.; The Challenge Printing of the Carolinas, Inc., John /Jane Does 1-10, ABC Corp. 1-10, ABC Partnerships;** | |
| **Defendants.** | |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………………………..ii

I       PRELIMINARY STATEMENT………………………………………………………1

II      STATEMENT OF FACTS……………………………………………………………..1

III     SUMMARY OF LEGAL ARGUMENT………………………………………………1

IV      ARGUMENT…………………………………………………………………………...3

        POINT I       PLAINTIFF'S AMENDED COMPLAINT IS NOT PREEMPTED BY
                    ERISA……………………………………………………………………..3

        POINT II      THE ASSIGNMENT OBTAINED FROM PATIENT N.G. IS VALID
                    AND THE ANTI-ASSIGNMENT CLAUSE IS UNENFORCEABLE…..4

             A.       PLAINTIFF HAS SUFFICIENTLY PLEADED ASSIGNMENT TO
                    ESTABLISH STANDING…………………………………………….4

             B.       THE ANTI-ASSIGNMENT CLAUSE IS UNFORCEABLE…………5

             C.       DEFENDANTS HAVE WAIVED THE ANTI-ASSIGNMENT CLAUSE
                    …………………………………………………………………..7

             D.       DEFENDANTS ARE ESTOPPED FROM INSISTING FROM UPON
                    ENFORCEMENT OF THE ANTI-ASSIGNMENT CLAUSE..................9

        POINT III     PLAINTIFF'S CLAIMS CAN NOT BE BARRED BECAUSE: (A) THE
                    CONTRACTS ONE-YEAR STATUTE OF LIMITATION IS
                    MANIFESTLY UNREASONABLE ON ITS FACE; and (B)
                    PLAINTIFF'S CLAIMS WERE TIMELY SUBMITTED WITHIN THE
                    CONTRACT'S ONE-YEAR STATUTE OF LIMITATIONS………….10

             A.       THE  PLAN'S  ONE-YEAR  STATUTE  OF  LIMITATIONS  IS
                    MANIFESTLY UNREASONABLE ON ITS FACE……………………11

              B.       PLAINTIFF'S CLAIMS WERE TIMELY SUBMITTED WITHIN THE
                    PLAN'S ONE-YEAR STATUTE OF LIMITATIONS…………………14

        POINT IV      DEFENDANT IAA IS A POTENTIAL FIDUCIARY OF THE PLAN
                    AND THEREFORE IS A PROPER PARTY DEFENDANT…………...16

V       CONCLUSION……………………………………………………………...…18

i

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.,

    698 F.3d 229 (5th Cir. 2012)…………………………………………………………...5

Carter v. Exxon Co. USA, a Div. of Exxon Corp.,

    177 F.3d 197 (3d Cir. 1999)…………………………………………………………...12

Donovan v. Mercer,

    747 F.2d 304 (5th Cir. 1984)……………………………………………...…………...17

Ehnes v. Hronis,

    127 N.J.L. 551 (1942) ………………………………………………………………12

Fitts v. Chase Manhattan Mortg. Corp.,

    2006 WL 3432296 (N.J. Super. Ct. App. Div. Nov. 30, 2006)…………………………12

Fontana v. Diversified Group Adm'rs, Inc.,

    67 Fed. Appx. 722 (3d Cir. 2003)……………………………………………………...13

Franco v. Connecticut Gen. Life Ins. Co.,

    818 F. Supp. 2d 792 (D.N.J. 2011)…………………………………………………...4

Garden State Bldgs., L.P. v. First Fid. Bank, N.A.,

    305 N.J. Super. 510 (App. Div. 1997)………………………………………………7

Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.,

    CIV.A.08-6160 (JAG), 2009 WL 3233427 (D.N.J. Sept. 30, 2009)…………………...7, 8

Glenpointe Associates, III v. Regency Sav. Bank,

    2006 WL 2786885 (D.N.J. Sept. 25, 2006)…………………………………………...12

Grasselino v. First Unum Life Ins. Co.,

    WL 5416403 (D.N.J. Dec. 22, 2008)…………………………………………………13

Grayson v. Mayview State Hosp.,

    293 F.3d 103 (3d Cir.2002)……………………………………………………17

Gregory Surgical Serv., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.,

    CIV.A.06-0462(JAG), 2007 WL 4570323 (D.N.J. Dec. 26, 2007)……………...…..7, 8, 9

Hahnemann University Hosp. v. All Shore, Inc.,

    514 F.3d 300 (3d Cir. 2008)………………………………………………………11, 14

Hermann Hosp. v. MEBA Med. & Benefits Plan,

    845 F.2d 1286 (5th Cir. 1988)…………………………………………………....6

Hermann Hosp. v. MEBA Med. & Benefits Plan,

    959 F.2d 569 (5th Cir. 1992)……………………………………………5, 9, 10

In re Blue Cross of Western Pennsylvania Litigation,

    942 F.Supp. 1061 (W.D.Pa. 1996)…………..………………………………………...16

Klimowicz v. Unum Life Ins. Co. of America,

    296 Fed. Appx. 248 (3d Cir. 2008)………………….……………………………12, 13

Koert v. GE Group Life Assurance Co.,

    231 Fed. Appx. 117 (3d Cir. 2007)…………………………………………...…13

Kramer v. Smith Barney,

    80 F.3d 1080 (5th Cir. 1996)………………….……………………………..16, 17

Miller v. Fortis Benefits Ins. Co.,

    475 F.3d 516 (3d Cir. 2007)……………………………………….…………11, 14, 15

New York v. Hill,

    528 U.S. 110 (2000)…………………………………………………………...17

North Lake Regional Medical Center v. Waffle House Sys., Employee Benefit Plan,

    160 F.3d 1301 (11th Cir. 1998)……………………..………………………………13

Paine v. Blue Cross & Blue Shield,

    WL 235537 (4th Cir. 1992)……………………………………………………………13

Premier Health Ctr., P.C. v. UnitedHealth Group,

    2012 WL 1135608 (D.N.J. Apr. 4, 2012)…………………………….…………..4, 5, 7, 8

Romero v. Allstate Corp.,

    404 F.3d 212 (3d Cir.2005)……………………………………………………………14

Rumpf v. Metropolitan Life Insurance Co.,

    2010 WL 2902543 (E.D.Pa. 2010)……………..…………………………………...11, 15

Scheirer v. Nmu Pension & Welfare Plan,

    585 F. Supp. 76 (S.D.N.Y. 1994)……………………………………………………..13

Stallings v. IBM Corp.,

    2009 WL 2905471 (D.N.J. 2009)……………………………………………13, 14


**FEDERAL STATUTES**

29 U.S.C.§1002(21)(A)………………………………………………………………16, 17

ERISA§ 502(a)(1)…………………………………………………………………………3


**STATE STATUTES**

N.J.S.A. 2A:14-1…………………………………………………………………………11

N.J.S.A. 26:2S-6.1………………………………………………………………………...6


**FEDERAL RULES**

F.R.C.P. 12(b)(6)………………………………………………………………………….2

iv

## PRELIMINARY STATEMENT

This action involves Defendants Insurance Administrators of America, Inc., Challenge Printing Co., Inc. and The Challenge Printing Co. of the Carolinas Inc.'s (collectively, "Defendants") failure to reimburse Dr. Neville Mirza, M.D. ("Plaintiff") for medically necessary services to Patient N.G.[1]  Defendants' motion to dismiss is little more than a veiled attempt to avoid paying for these medically necessary services provided to their insured by attempting to exploit various technical arguments.  As each and every one of these arguments is unworthy of merit, Defendants' motion to dismiss must be denied.

## STATEMENT OF FACTS

Plaintiff Dr. Neville M. Mirza, M.D. provided medically reasonable and necessary services to N.G., an insured of Defendants on or about April 10, 2010 through June 22, 2010.  At the commencement of treatment, Plaintiff obtained an assignment of benefits from N.G.  See Redacted Assignment of Patient N.G. attached hereto as **Exhibit A**.  Plaintiff also prepared a Health Insurance Claim Form formally demanding reimbursement in the amount of $38,250.00 for the medically necessary services rendered to N.G.  See *Ex. A* to Pl.'s Am. Cmpl.

Subsequently, Plaintiff received payment in the amount of $651.86 for the medically reasonable and necessary services provided to N.G.  Defendants refused to reimburse Plaintiff the remaining balance for services provided to Defendants' insured.  This resulted in an underpayment of $37,598.14.

## SUMMARY OF LEGAL ARGUMENT

As a threshold matter, the claims at issue are not preempted under the Employee Retirement Income Security Act ("ERISA").  Dr. Mirza has sought relief under the civil

---

[1] To avoid the unnecessary disclosure of patient Protected Health Information ("PHI") in contravention of privacy rules under HIPAA, this patient will be referred to as "N.G."

enforcement provisions of ERISA.  See Pl.'s Am. Cmpl. at Counts 2 and 3.  Further, while the state law breach of contract claim stated in Count 1 of the Amended Complaint may very well be preempted by ERISA, the Defendants have not established that The Challenge Printing Company Employee Benefit Plan for Medical, Dental, Vision and Prescription Drugs ("the Plan"), (***Ex. A*** to Decl. of Christine Hammerquist at Bates No.: IAA-001) is indeed subject to ERISA. Notwithstanding, in the interest of conserving judicial research, Dr. Mirza will agree to voluntarily withdraw Count 1 of the Amended Complaint without prejudice to the refiling thereof in the event it is discovered that ERISA does not govern the Plan or policy at issue.

As for the Assignment of Benefits, even Defendants admit that at minimum, a right to receive payment has been assigned to Plaintiff through the Health Insurance Claim Form.  This admission alone should be sufficient to establish Plaintiff's standing.  In any case, Dr. Mirza has obtained a valid assignment of benefits and thus has presented more than enough evidence of its standing to bring the instant claim against Defendants.  In any event, Plaintiff has attached an assignment obtained from the patient at or around the time of surgery.  See Redacted Assignment of Patient N.G. attached hereto as **Exhibit A**.

With regard to the anti-assignment clause in the Plan, Defendants' anti-assignment clause is not enforceable and is void against public policy.  Moreover, even if the anti-assignment clause were valid, Defendants' have waived their right to enforce the anti-assignment clause through their course of conduct with Dr. Mirza.[2]  In any event, Defendants' are estopped from enforcing the anti-assignment clause due to their systematic failure to alert Dr. Mirza of the existence of such a clause.

---

[2] These issues are questions of fact which are not ripe for adjudication pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

With regard to Defendants' contractual Statute of Limitations argument, the Plan's contractual statute of limitations is unenforceable as unreasonable and against public policy. Even if Defendants are not estopped from asserting their contractual statute of limitations and it is found to be enforceable, Dr. Mirza has filed the instant matter in a timely manner pursuant to the plain language of the Plan.

Finally, Defendant Insurance Administrator of America Inc. ("IAA") is a proper party to the instant matter as discussed in greater detail below.   Even if we accept as true IAA's allegation that the Complaint fails to state a claim upon which relief can be granted, such a dismissal should be without prejudice to the refiling thereof and Dr. Mirza should have an opportunity to amend the complaint in the event the Court dismisses Defendant IAA.

For the following reasons, Defendants' Motion to Dismiss must be **denied**.

## LEGAL ARGUMENT

### I.        PLAINTIFF'S AMENDED COMPLAINT IS NOT PREEMPTED BY ERISA

Plaintiff's First Amended Complaint states a claim for relief under the civil enforcement provision located at § 502(a)(1) of ERISA.  See Pl.'s Am. Cmpl. at Count 2.  In addition, Dr. Mirza is seeking damages for Defendants failure to provide a copy of the Summary Plan Description ("SPD") or other relevant benefit documents.  See Pl.'s Am. Cmpl. at Count 3. These two causes of action are not subject to preemption as they are part of the civil enforcement scheme intended by Congress to provide aggrieved parties with recourse against payors failing to comply with ERISA.

The state law breach of contract claim was included in the event that the Plan was not governed by ERISA.  See Pl.'s Am. Cmpl. at Count 3.  As Defendants maintain that the Plan is indeed governed by ERISA, Plaintiff agrees to voluntarily dismiss the state law breach of

contract claim without prejudice in the interest of proceeding in an efficient manner, as well as to conserve judicial resources. However, as future discovery may reveal that ERISA does not govern this Plan, Plaintiff wishes to retain its right to supplement its complaint with state law causes of action. Accordingly, Plaintiff respectfully requests a voluntary dismissal of the breach of contract claim <u>without prejudice</u>.

## II.    THE ASSIGNMENT OBTAINED FROM PATIENT N.G. IS VALID AND THE ANTI-ASSIGNMENT CLAUSE IS UNENFORCEABLE

### A.  Plaintiff Has Sufficiently Pleaded Assignment to Establish Standing

Defendant contends that Plaintiff failed to sufficiently plead its assignment in its complaint. Defendant cites <u>Franco v. Connecticut Gen. Life Ins. Co.</u>, 818 F. Supp. 2d 792, 810-811 (D.N.J. 2011) for the proposition that the breadth of an assignment must be sufficiently pleaded to show that the provider has been assigned the right to enforce the patient's rights under the plan, and not merely a right to receive reimbursement.

From the outset, Plaintiff notes the lack of binding authority regarding this issue in the Third Circuit. Further, the District Courts that have examined this issue have taken different approaches regarding the pleading of standing via assignment. Thus, <u>Franco</u> merely represents a potential approach among the different approaches taken by the District Courts.

In stark contrast to <u>Franco</u>, the District Court in <u>Premier Health Ctr., P.C. v. UnitedHealth Group</u>, 2012 WL 1135608 at *7 (D.N.J. Apr. 4, 2012) takes the position that Plaintiffs do not even have to attach an actual assignment to its pleading. The <u>Premier Health</u> Court held that at this stage of the litigation, a Plaintiff's clear allegations that assignments exist and that it is relying on them to support its right to recovery is sufficient to establish standing by assignment. "Nothing more is required." <u>Id.</u>

4

The <u>Premier Health</u> Court also recognized that it would be "illogical to recognize that [a] valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right." <u>Id.</u> at *8.  As such, the Court held that an assignment of a right to reimbursement must "logically include the ability to seek judicial enforcement of that right." <u>Id.</u>

As Defendants themselves admit, the attached Health Insurance Claim Form – at minimum – "allows for payment of medical benefits to the provider." <u>See</u> Mem. of Law in Supp. of Defs.' Mot. to Dismiss at p. 14.  Under the <u>Premier Health</u> approach, this is sufficient to establish derivative standing at the motion to dismiss stage.

In any case, Plaintiff has another assignment of benefits from N.G. that satisfies even the stringent standards of <u>Franco</u>.  <u>See</u> Redacted Assignment of Patient N.G. attached hereto as **Exhibit A**.  This assignment assigns from the patient "all rights that he/she may have," and authorizes Plaintiff to retain an attorney to institute a law suit in the patient's name.  Accordingly, under any standard, Plaintiff has provided more than enough evidence of a valid assignment to overcome a motion to dismiss.

### B.  The Anti-Assignment Clause is Unenforceable

The anti-assignment clause in Defendants' Plan is unenforceable against providers of the very services which the plan is maintained to furnish.  Plaintiff is unaware of any binding authority regarding the enforceability of anti-assignment clauses.  However, the 5th Circuit's reasoning in <u>Hermann Hosp. v. MEBA Med. & Benefits Plan</u>, 959 F.2d 569 (5th Cir. 1992) ("<u>Herman II</u>")[3] is persuasive on this matter.  In this ERISA case, the Circuit Court held that the anti-assignment clause in the plan applied only to unrelated, third-party assignees, such as

---

[3] Hermann II and Herman I, below, were recently overruled by the 5th Circuit on other grounds.  Specifically, those portions of the opinions that held that the provider's state law claims of fraud and negligent misrepresentation were pre-empted by ERISA were overruled.  <u>See</u> <u>Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co</u>., 698 F.3d 229 (5th Cir. 2012).

creditors who might attempt to obtain assignments to cover unrelated debts.  In contrast, the Court held that the anti-assignment clause was inapplicable to the provider of the very services which the plan is maintained to furnish.

The Hermann II Court noted that if anti-assignment clauses were enforced against such providers, providers would be unable to recover for services rendered, unless the patient first sued the plan for recovery of benefits under ERISA.  If the patient recovered against the plan, the providers would then have to sue to patient to recover payment for the services rendered.  The Court stated that such a result would be inequitable as the patient, knowing that any recovery from the plan would immediately go to the provider, would have no incentive to pursue payment, and might be reluctant to sue a plan maintained by his own employer or union.

Furthermore, the 5th Circuit in Hermann Hosp. v. MEBA Med. & Benefits Plan, 845 F.2d 1286 (5th Cir. 1988) ("Hermann I") stated that denying standing to providers would undermine Congress' goal of enhancing employees' health and welfare benefit coverage.  Many providers seek assignments of benefits to avoid billing the beneficiary directly and upsetting his finances and to reduce the risk of non-payment.  Denying standing to providers would discourage the providers from becoming assignees, and possibly from helping beneficiaries who were unable to pay them "up-front." Finally, the Court remarked that providers are better situated and financed to pursue an action for benefits owed for their services.

Additionally, such a term may be void against New Jersey public policy as well. Pursuant to N.J.S.A. 26:2S-6.1:

> c.  With respect to a carrier which offers a managed care plan that provides for both in-network and out-of-network benefits, in the event that the covered person assigns, through an assignment of benefits, his right to receive reimbursement for medically necessary health care services to an out-of-network health care provider, the carrier shall remit payment for the reimbursement directly to the health care provider in the form of a check payable to the health care provider, or

in the alternative, to the health care provider and the covered person as joint payees, with a signature line for each of the payees. Payment shall be made in accordance with the provisions of this section and P.L.1999, c. 154 (C.17B:30-23 et al.). Any payment made only to the covered person rather than the health care provider under these circumstances shall be considered unpaid, and unless remitted to the health care provider within the time frames established by P.L.1999, c. 154 (C.17B:30-23 et al.), shall be considered overdue and subject to an interest charge as provided in that act.

Thus, New Jersey requires carriers who offer out-of-network benefits to honor an assignment of benefits and make payment directly to providers. As such, Defendants' purported anti-assignment clause may be void against New Jersey public policy.

Accordingly, the Plan's anti-assignment clause should not be enforced against Plaintiff, who is a provider of the very services which the Plan is maintained to furnish.

### C.  Defendants Have Waived the Anti-Assignment Clause

Even if the Plan's anti-assignment provisions are erroneously deemed enforceable, it has been waived based upon the course of conduct between Plaintiff and Defendant. Under New Jersey law, "an anti-assignment clause may be waived by a written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-a-vis the assignee." Garden State Bldgs., L.P. v. First Fid. Bank, N.A., 305 N.J. Super. 510, 524 (App. Div. 1997). Three District of New Jersey courts have applied the above standard in the ERISA context, and all three have found waivers of anti-assignment provisions based upon a course of conduct between the insurer and the provider. See generally Premier Health Ctr., P.C. v. UnitedHealth Group, CIV.A. 11-425 ES, 2012 WL 1135608 (D.N.J. Apr. 4, 2012); Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc., CIV.A.08-6160 (JAG), 2009 WL 3233427 (D.N.J. Sept. 30, 2009); Gregory Surgical Serv., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc., CIV.A.06-0462(JAG), 2007 WL 4570323 (D.N.J. Dec. 26, 2007).

In all three cases, the insurer argued that direct payment of reimbursements to the provider were within the terms of the plans at issue and thus could not constitute a waiver. See Premier Health, 2012 WL 1135608 at *10; Glen Ridge Surgicenter, 2009 WL 3233427 at *4; Gregory Surgical 2007 WL 4570323 at *4.  Although acknowledging that direct payments to the provider, standing alone, would not constitute a waiver if authorized under the plans at issue, all three courts found that a course of conduct beyond direct reimbursement for medical services existed.  See e.g. Premier Health, 2012 WL 1135608 at *10.  The course of conduct described in the three cases included: discussions of patient coverage under health care policies,[4] direct submission of claim forms, direct reimbursement of medical costs, and engagement in appeal processes.  See e.g. Premier Health, 2012 WL 1135608 at *10.  The courts found that such "regular interaction between [insurer] and [provider] prior to and after claim forms are submitted, without mention of [insurer]'s invocation of the anti-assignment clause" impeded the insurer's ability to rely on the anti-assignment provision to challenge plaintiff's standing.  See e.g. id.  Therefore, such course of conduct will constitute a waiver of any right to enforce the anti-assignment provision and establish a plaintiff's standing to sue under ERISA.  See id.

Here, there exists an obvious course of conduct between Plaintiff provider and Defendant.  Specifically, Defendant – through its representative Pat Drexler – engaged in appeal processes with Plaintiff.  See generally Certification of Mayda Aviles.  On November 23, 2010, Pat Drexler advised Plaintiff that the Plan allowed 12 months to appeal, and that Plaintiff could do a DOBI appeal.  Id. at ¶ 5.  On March 18, 2011, Pat Drexler requested that Plaintiff send an

---

[4] This includes discussion of: existence, nature, and extent of the patient's out-of-network coverage; whether specific procedures are covered under the applicable insurance policy; the amounts of applicable co-payments and deductibles; pre-existing conditions; whether the patient has satisfied applicable requirements for authorizations or referrals, such as authorizations from provider or referrals from a primary care physician, without which provider will not go forward with a procedure; other issues concerning the patient's insurance coverage.  Glen Ridge Surgicenter, 2009 WL 3233427 at *4.

appeal to her with proofs, which Plaintiff proceeded to fax on March 22, 2011.  Id. at ¶¶ 9-10. At no time did Defendants, nor any of its representatives invoke the anti-assignment clause, or make any mention to that effect.

Thus, it is clear that such regular interaction between Plaintiff and Defendant, without mention of the anti-assignment clause impedes Defendant's ability to rely on the anti-assignment provision to challenge Plaintiff's standing.   Accordingly, Defendant has waived the anti-assignment provisions contained within the Plan.

### D. Defendants are Estopped from Insisting Upon Enforcement of the Anti-Assignment Clause

Additionally, even if the anti-assignment provisions are erroneously deemed enforceable, Defendant is equitably estopped from insisting upon its enforcement.   "A party is equitably estopped from enforcing a right when it voluntarily conducts itself in a manner precludes it from asserting that right, and another person relied in good faith on the party's conduct and was injured as a result."  Gregory Surgical, 2007 WL 4570323 at *3.  The Fifth Circuit[5] addressed this very issue in Hermann II, supra.

In Hermann II, the out-of-network provider had received a valid assignment from the patient.   Id. at 574.   Pursuant to the assignment, the provider maintained continuous communication with the insurer throughout the six months of treatment, attempting to obtain periodic payments on the claim.   Id.   The insurer failed to make any reference to the anti-assignment clause as a basis for non-payment in its communication with the provider.   Id. Without knowledge of any anti-assignment clause, the provider continued to provide treatment to the patient until her death.   Id.   A few years later, the provider filed suit to recover payment for

---

[5] Plaintiff is unaware of any case addressing this issue in the ERISA context in either the Third Circuit or in New Jersey.

the services furnished to the patient.  Id.  Only then did the insurer – for the first time – assert the anti-assignment clause as a basis for its refusal to pay.  Id.

The Hermann II Court noted that although the anti-assignment clause was contained in the Plan documentation, the out-of-network provider, which was not privy to the Plan, had no opportunity to review that documentation.  Id.  As such, the Court found that it was the insurer's responsibility to notify the provider of the anti-assignment clause if it intended to rely on it to avoid any attempted assignments.  Id.  The Hermann Court went on to conclude that the insurer was estopped from asserting the anti-assignment clause because of its "protracted failure to assert the clause when [provider] requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits."  Id. at 575.

Here, as in Hermann II, the Defendant failed to assert the anti-assignment provisions as a basis for its refusal to pay until after suit was filed.  Plaintiff, as an out-of-network provider not privy to the Plan, had no opportunity to review the Plan and discover the anti-assignment provisions.  Despite this, Defendant has not made any mention of the anti-assignment provisions nor its intent to rely upon them since treatment began in April 2010, or even when the appeal process was initiated in November 2010.  As a consequence of Defendant's continued failure to notify Plaintiff of the anti-assignment provisions, Plaintiff continued to provide services and pursue appeals, completely unaware of the provisions' existence.

As such, Defendant's protracted failure to assert the anti-assignment provisions estops Defendant from asserting the provisions for the first time in litigation.

III.    **PLAINTIFF'S CLAIMS CAN NOT BE BARRED BECAUSE: (A) THE CONTRACTS ONE-YEAR STATUTE OF LIMITATION IS MANIFESTLY UNREASONABLE ON ITS FACE; and (B) PLAINTIFF'S CLAIMS WERE TIMELY SUBMITTED WITHIN THE CONTRACT'S ONE-YEAR STATUTE OF LIMITATIONS.**

The Plaintiff's Complaint should not be dismissed as being time-barred because the complaint was filed within the Plan's one-year statute of limitations.  Additionally, even though the Complaint was timely filed, the plan's one-year statute of limitations is manifestly unreasonable, making it unenforceable as a matter of law because it places a one-year time limit on the Courts to resolve the Plaintiff's claim.

Since ERISA does not specify a statute of limitations for the denial of benefits claims, the Courts have determined that "the applicable statute of limitations is that of the forum state claim most analogous to the ERISA claim at hand." Rumpf v. Metropolitan Life Insurance Co., 2010 WL 2902543, *5 (E.D.Pa. 2010) (citing Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520 (3d Cir. 2007)).  Under New Jersey law, Courts have applied the six-year statute of limitations for a breach of contract claim. N.J.S.A. 2A:14-1.  Furthermore, while parties are allowed to contract for a shorter limitation period the contractual period must not be unreasonable.  Hahnemann University Hosp. v. All Shore, Inc., 514 F.3d 300, 306 (3d Cir. 2008).

### A.   The Plan's One-Year Statute Of Limitations Is Manifestly Unreasonable On Its Face.

Even though the Plaintiff's claim was timely filed within the Plan's one-year statute of limitations, the provision itself is manifestly unreasonable and plain ridiculous because it mandates dismissal of the same claim if that claim is not fully adjudicated within the same twelve-month period.  The Plan's provision states:

> Please note that no legal action may be commenced or maintained to recover benefits under the Plan more than 12 months after the final review/appeal decision by the Plan Administrator has rendered (or deemed rendered).

See "Plan" at Bates No.: IAA-0127 (emphasis added).

The plain language of the plan's provision mandates that no action can be maintained on the 366th day after an adverse determination has been rendered (or deemed rendered).[6]  If the Court accepts the plain language of the contract, the Plaintiff would be required to file a complaint, receive an answer, conduct extensive discovery, and try a matter in a time period less than 12 months, or else face dismissal under the same ridiculous premise which opposing counsel endorses here.  It is clear that the limiting language in the Defendant's plan is manifestly unreasonable and therefore should be determined void.

Opposing counsel relies on the Third Circuit's reasoning in Klimowicz v. Unum Life Ins. Co. of America, 296 Fed. Appx. 248, 250-51 (3d Cir. 2008), where the Court held that a three-year contractual statute of limitations was enforceable, so long as it was not manifestly unreasonable.  In Klimowicz, the claimant filed suit seeking benefits under the plan subsequent to the expiration of contractual three-year statute of limitations. The contractual limitation clause the Court relied on stated, in the pertinent part, "a claimant . . . cannot start any legal action . . . more than 3 years after the time [when] proof of claim is required." Id. at 50.

Our facts differ substantially from those in Klimowicz. First, the contractual statute of limitations in the present case is a mere twelve months, instead of the three-year provision at issue in Klimowicz. Second, the contractual statute of limitations in Klimowicz did not contain any language indicating that there would be an absolute denial of benefits if a particular claim was not initiated and **fully adjudicated** within twelve months.

---

[6] Defendants cannot argue that the Plan merely prescribes a one-year statute of limitations to initiate litigation – such an interpretation renders the terms "or maintain" superfluous and meaningless. Contract provisions are to be "interpreted so as to give each provision meaning, rather than rendering some provisions superfluous." Carter v. Exxon Co. USA, a Div. of Exxon Corp., 177 F.3d 197, 206 (3d Cir. 1999), citing Ehnes v. Hronis, 127 N.J.L. 551 (1942); see also Glenpointe Associates, III v. Regency Sav. Bank, 2006 WL 2786885 (D.N.J. Sept. 25, 2006) ("the Court should avoid interpreting contractual language in a way that renders any term of the contract meaningless or superfluous."); Fitts v. Chase Manhattan Mortg. Corp., 2006 WL 3432296 (N.J. Super. Ct. App. Div. Nov. 30, 2006) ("[T]he court is required to give meaning to every word in the contract rather than leave a portion of the writing useless or inexplicable.); Restatement (Second) of Contracts § 203, cmt b (1981).

Opposing counsel also relies on the unreported decision, <u>Stallings v. IBM Corp.</u>, 2009 WL 2905471 (D.N.J. 2009),  in which the Court held "that nothing about the two year limitations period is 'manifestly unreasonable' because the period provided sufficient opportunity for the Plaintiffs to state a claim for benefits. <u>Id.</u> at *6. In <u>Stallings</u>, the claimant's beneficiaries brought suit beyond the contractual two-year statute of limitations and argued that a two-year limit was unreasonable in light of New Jersey's six-year statute of limitations for similar claims. <u>Id.</u> Although the Court reasoned that this two-year limitation was similar to the three-year limitation in <u>Klimowicz</u>, Plaintiff notes that neither of these contracts contained any limiting language requiring **full adjudication** within a certain time period, as is contained in the instant Plan.[7] Furthermore, the Court seemed to suggest that contractual statutes of limitations could be deemed manifestly unreasonable if they "interfere with Congress's intent to protect ERISA beneficiaries and participants." <u>Id.</u>

As in <u>Klimowicz</u>, the facts in the present case are substantially different from those in <u>Stallings</u>. The Court in <u>Stallings</u> did not address the validity, enforceability, and reasonableness of a twelve-month statute of limitations. Additionally, the Court in <u>Stallings</u> did not address how unreasonable it was for a benefits plan to mandate dismissal of the same claim if that claim was not **fully adjudicated** within the same twelve month period.

---

[7] Opposing counsel relies on Judge Kugler's acknowledgment of several cases with similar contracted statutes of limitations. However, each case is factually distinguishable because the clauses in question do not mandate complete adjudication within that same contracted period. <u>Klimowicz</u>, 296 Fed. Appx at 251 (A three-year time period); <u>Koert v. GE Group Life Assurance Co.</u>, 231 Fed. Appx 117 (3d Cir. 2007), (A three-year time period); <u>Fontana v. Diversified Group Adm'rs, Inc.</u>, 67 Fed. Appx. 722 (3d Cir. 2003) (A three-year time period); <u>Grasselino v. First Unum Life Ins. Co.</u>, WL 5416403 (D.N.J. Dec. 22, 2008) (A three year time period); <u>North Lake Regional Medical Center v. Waffle House Sys., Employee Benefit Plan</u>, 160 F.3d 1301, 1304 (11th Cir. 1998). The Court suggested that a 90-day limit was rare and limited to the specific facts at hand because the Court also considered the 10-month administrative process. The Court stated, "We do not mean to suggest that a 90-day limitations period will always be reasonable, nor do we mean to suggest that a shorter limitations period will ever be reasonable. There are at least three facts in this case that support the reasonableness of the 90-day limitations period."); In <u>Paine v. Blue Cross & Blue Shield</u>, WL 235537, *2 (4th Cir. 1992) Claimant was unable to provide authority to challenge a 12-month contractual statute of limitations as being unreasonable. The clause in question did not mandate full adjudication within the same twelve-month period as in this case; <u>Scheirer v. Nmu Pension & Welfare Plan</u>, 585 F. Supp. 76 (S.D.N.Y. 1994) (A two-year and ninety-day period).

13

There is no binding case law in our jurisdiction enforcing a twelve-month statute of limitations with language like the one before us, for the payment of medical services under an ERISA Plan, and especially one that also states that a Plaintiff must **fully adjudicate** its claim within the twelve-month period.  As, Judge Kugler noted in <u>Stallings</u>, "the Third Circuit has not expressly stated what makes a contractual period unreasonable in the ERISA context." <u>Stallings</u>, at *4.

Considering the unreasonable nature of this clause on its face, the potential for abuse by the Defendants when treating future claims if this clause is rendered reasonable, and the clear violation of public policy by mandating all-or-nothing time limits on legitimate causes of action, this Court must deem this particular 12-month limitation to be manifestly unreasonable.

>           **B.    Plaintiff's Claims Were Timely Submitted Within The Plan's One-Year Statute Of Limitations.**

Even if the Court were to find the one-year statute of limitations to be reasonable, Plaintiff's claim must be maintained because it was timely filed within the Plan's one-year statute of limitations provision.  In this particular action, Plaintiff filed the original complaint on February 29, 2012.  Opposing counsel incorrectly suggests that the final appeal notification was August 12, 2010, when in fact the correct accrual date is April 14, 2011.

As stated previously, ERISA does not specify a statute of limitations for the denial of benefits claims and courts tend to "borrow" the most analogous state statute of limitations. <u>Hahnemann</u>, 514 F.3d at 305-06.  However, "the accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period."  <u>Miller v. Fortis Benefits Insurance Company</u>, 475 F.3d 516, 520 (3d Cir. 2006), (citing <u>Romero v. Allstate Corp.</u>, 404 F.3d 212, 220 (3d Cir.2005)). In <u>Miller</u>, the Court further stated;

14

> In order to determine the accrual date of a federal claim, we utilize the federal "discovery rule" when there is no controlling federal statute. Under this rule, a statue of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim. In the ERISA context the discovery rule has been "developed" into the more specific "clear repudiation" rule. Id.

Furthermore, in Rumpf, the court stated, "the Third Circuit has not directly held whether a claim for benefits can be considered to have been 'clearly repudiated' before an individual has completed the requisite **exhaustion of administrative remedies**." Rumpf, 2010 WL 2902543, at *7 (emphasis added). In Rumpf, the defendant had denied the plaintiff's claim for benefits in a letter dated July 30, 2004. Id. at *8. The Rumpf defendant's letter instructed plaintiff of his right to appeal the denial of benefits under his plan. Id. The Rumpf plaintiff thus initiated an internal appeal, which was finally denied on February 16, 2005. Id.

The Rumpf Court sensibly concluded that it would be "unfair and inequitable to hold Plaintiff to any disadvantage" because she followed the instructions in the defendant's initial denial letter. Id. As a result, the Court ruled that it would be a "miscarriage of justice" to find that the accrual date started any earlier than the final denial date of February 16, 2005. Id.

Similar to Rumpf, Plaintiff was merely following the instructions issued by Defendants' representative. On November 23, 2010, our office contacted Defendant IAA for the third time. It was during this conversation that Pat Drexler, an IAA supervisor, indicated to Plaintiff that, "a patient self-funded plan allows 12 months to appeal." Certification of Mayda Aviles at ¶ 4. On February 10, 2011, Plaintiff caused an ERISA letter to be sent to Defendant IAA. Id. at ¶ 5. Shortly after, on March 18, 2011, Pat Drexler requested that Plaintiff send an appeal with proof. Id. at ¶ 6. On March 22, 2011, Plaintiff sent an appeal directly to Pat Drexler. Id. at ¶ 7. On April 14, 2011, the Plaintiff received a letter from Defendant IAA indicating that Plaintiff's

appeal was denied.  Id. at ¶ 11; 4/11/11 IAA Letter, attached as **Exhibit 1** to Certification of Mayda Aviles.

It is clear that Defendant's instructions indicated to the Plaintiff that an appeal was still available well after August 12, 2010 – in effect, that administrative remedies were not exhausted. As such, it would be "unfair and inequitable" to hold Plaintiff to any disadvantage because he followed Defendant's instructions.  Further, it would be a "miscarriage of justice" to find that the accrual date started any earlier than the final denial date of April 14, 2011.

Accordingly, Plaintiff's Complaint (which Defendants admit was filed within 12 months of April 14, 2011) was timely.

## IV.    DEFENDANT IAA IS A POTENTIAL FIDUCIARY OF THE PLAN AND THEREFORE IS A PROPER PARTY DEFENDANT

Although Federal Law mandates who may bring a civil action under ERISA, it does not spell out a requirement that a particular claim be brought only against a plan.  In re Blue Cross of Western Pennsylvania Litigation, 942 F.Supp. 1061, 1064 (W.D.Pa. 1996).  In fact, there have been instances where the Court has concluded that a plan fiduciary is also a proper party defendant.  Kramer v. Smith Barney, 80 F.3d 1080, 1083 (5th Cir. 1996).  The Kramer Court stated, "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach."

In order to determine the true meaning of "fiduciary" Courts must first turn to the statutory definition under 29 U.S.C.§1002(21)(A) which states in pertinent:

> A person is a fiduciary . . . to the extent  (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control

16

> respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

When interpreting this definition, it can be said as a general principle that the definition of "fiduciary" must be broadly construed.  In fact, Courts have noted that Congress intended the definition of 'fiduciary' to be broadly construed. <u>Donovan v. Mercer</u>, 747 F2d 304, 308 (5th Cir. 1984).  Furthermore, the existence of any fiduciary relationship with respect to a plan is a question of law and fact.  <u>Kramer</u>, 80 F.3d at 1083.

Because of the fact-intensive nature of determining whether a fiduciary relationship existed between the Defendants and because of discovery has not been completed, this Court must give the Plaintiff the fair opportunity to determine if in fact the Defendant is a fiduciary.  In any event, Plaintiff requests that if this Court should decide to grant Defendants' motion to dismiss IAA as a Defendant, that such dismissal be granted without prejudice to the refiling thereof.  The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." <u>New York v. Hill</u>, 528 U.S. 110, 118 (2000).  Even when the plaintiff himself does **not** seek leave to amend a deficient complaint after a defendant moves to dismiss it, the **court** must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir.2002) (emphasis added).  As this matter is still in the early stages of litigation, it will be neither inequitable nor futile to grant a dismissal without prejudice to the refilling thereof.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,


By:     /s/ Sean R. Callagy
Sean R. Callagy, Esq.
650 From Road, Suite 565
Paramus, New Jersey 07652
Telephone: (201) 261-1700
Facsimile: (201) 261-1775
*Counsel for Plaintiff*

Date:   January 8, 2013